381 So.2d 170 (1980)
Louis N. RICO, Jr.
v.
PRECISION ENGINEERING AND MANUFACTURING COMPANY, INC.
No. 51657.
Supreme Court of Mississippi.
March 12, 1980.
Moreton, Woodfield, Raines & Bloss, George F. Bloss, III, Gulfport, for appellant.
White & Morse, John H. Rice, Gulfport, for appellee.
Before ROBERTSON, P.J., and WALKER and LEE, JJ.
ROBERTSON, Presiding Justice, for the Court:
Louis N. Rico, Jr. sued his employer, Precision Engineering and Manufacturing Company, Inc. (Pemco), in the Circuit Court of Jackson County for damages sustained by him when he viewed his personal tool box left on the employer's premises and broken into by his employer when Rico failed to show up for work. Pemco filed a motion to dismiss for lack of jurisdiction, stating in its motion:
"That the face of the Declaration shows that the alleged cause of action claimed by the Plaintiff herein is grounded solely on alleged benefits due pursuant to the Workmen's Compensation Act of the State of Mississippi, and the sole and exclusive jurisdiction concerning benefits payable under the Act and pursuant to any workmen's compensation policy issued pursuant to that Act rests with the Mississippi Workmen's Compensation Commission of the State of Mississippi."
The court sustained Pemco's motion to dismiss, the order stating:
"[I]t is therefore,
ORDERED and ADJUDGED that this cause be, and hereby is, dismissed with prejudice on the grounds that the Plaintiff's sole and exclusive remedy, if any, is the Mississippi Workmen's Compensation Act."
The facts, gleaned from the pleadings and exhibits, are rather unusual. Rico worked for Pemco as a machinist. On August 17, 1975, when Rico failed to show up for work, L.W. Zettler, vice president of Pemco, broke the lock on Rico's personal tool box and removed blueprints of the job on which Rico was working so that Pemco *171 could expedite the job. Plaintiff's declaration states:
"Plaintiff charges that on the following day, on or about August 18, 1975, after having been informed of the aforesaid conduct of the said L.W. Zettler, Plaintiff went to the business premises of the Defendant Corporation for the purpose of determining the nature and extent, if any, of damages to his tool box inflicted by the said L.W. Zettler, and that upon confirmation of the aforesaid conduct, the Plaintiff developed severe and disabling mental and emotional instability, necessitating his immediate admission to a hospital for a prolonged period of time, and the subsequent continuing care and treatment thereafter to date, all as a direct proximate result of the conduct of the Defendant Corporation, by and through its agent, servant, and employee as aforesaid.
.....
"Plaintiff charges that the Defendant Corporation, by and through its agent, servant, and employee, L.W. Zettler, was guilty of trespass against his personal property or chattels, as an independent cause of action, and without regard to whether said trespass also constitutes negligence, as alleged hereinabove, which trespass proximately caused or contributed to the damages and injuries suffered by the Plaintiff."
Rico first filed a claim with the Workmen's Compensation Commission but after Pemco answered, denying that Rico was injured on the job, and also filed its answers to interrogatories propounded to it, Rico moved for a voluntary dismissal or non-suit of his claim, and the administrative judge, on March 20, 1978, entered an order of voluntary dismissal, stating in part:
"[I]t appearing affirmatively in the record that all rights of the Employer, Pemco Manufacturing Company, are expressly reserved, and the Court having heard and maturely considered all of same, and being fully advised in the premises, if (sic) of the opinion that the Motion is well taken and ought to be sustained. It is therefore,
ORDERED AND ADJUDGED that this Claim, be, and it is hereby dismissed at the instance of the Claimant, and without prejudice."
Rico has assigned as error that:
I. The court committed reversible error in dismissing appellant's declaration and in holding that appellant's sole and exclusive remedy, if any, is under the Mississippi Workmen's Compensation Act.
II. The appellee failed to meet its affirmative burden of establishing that the injury sued on was an "injury arising out of and in the course of employment".
The Mississippi Workmen's Compensation law provides, among other things:
"Compensation shall be payable for disability or death of an employee from injury ... arising out of and in the course of employment. ..." [Miss. Code Ann. § 71-3-7 (1972)] (Emphasis added).
"The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee ... on account of such injury or death ..." [Miss. Code Ann. § 71-3-9 (1972)] (Emphasis added).
In Etchison v. State Accident Insurance Fund, 8 Or. App. 395, 494 P.2d 455 (1972), the Oregon Court of Appeals sustained a finding that the claimant's injury was compensable, where the employee had hurt his back while moving a work bench on a Saturday morning when he was not about his regular job. The court stated:
"The work bench in question was part of the tools of trade utilized by claimant in his employment, and its original use was for the benefit of the employer as were the other tools brought to the place of employment." 494 P.2d at 457.
Pemco contends that the use of a tool box is just as much for the benefit of an employer as a work bench. Pemco also asserts that the case at bar is analogous to one *172 where an employee is assaulted by a fellow employee. As stated in Dunn, Mississippi Workmen's Compensation, § 161 (2nd Ed. 1967):
"Assault by a fellow employee may be malicious and wilful or may result from friendly horseplay. The two situations have been considered as involving the same rule of liability. Compensation for resulting injuries has been awarded in both types of cases.

Causal connection has been found by reference to the general risk assumed by industry. The reasoning is that when the employment and nature of the work bring employees in close contact with each other, one of the natural hazards  normal risks  is an assault, and this is a risk assumed by the employer. Emphasis is here directed to the assumption of risk by the employer as a general concept. The assault need not be directed toward the employee because of his employment, as in the case of an assault by a third person. The application of the rule assumes that the employee is in the general course of his employment, ... ." (Emphasis added).
This further language from Etchison, supra, seems applicable:
"No positive formula determines with certainty every circumstance in which an accident may be considered to have arisen out of and in the course of employment.
`Courts have repeatedly cautioned that the reading of other decisions is normally of little assistance when this issue is presented and that each case must be decided on its own particular facts. Some guides, however, have been set forth. It, of course, is true that the words "arising out of and in the course of his employment" should be given a broad and liberal interpretation so as to effectuate better the statute's policy of evenly distributing the costs of injuries to workmen.' (Citation omitted.)
Among the factors considered are whether the activity was for the benefit of the employer and whether it was contemplated by the employer and employe either at the time of hiring or later. (Citation omitted.) If a workman is required to furnish his own tools at his place of employment it is for the benefit of his employer. If he were injured while moving such tools onto the premises of employment there would be little question about the compensability of the injury. The same would follow if immediately upon the tools becoming no longer necessary he commenced to remove them and was injured. It is difficult to discern a rational basis for excluding coverage by reason of removal of the tools at a subsequent time, particularly when the incident which gave rise to a claim for compensation arose on the employer's premises and while claimant was still employed by the employer. It was contemplated by both employer and employe that the terms of employment included having the employe bring necessary tools upon the premises. It follows that it was at least impliedly contemplated by both that when such tools were no longer necessary that subsequently they would be removed by the employe." 494 P.2d at 457. (Emphasis added).
The injury, if any, to Rico occurred when he was investigating the damaging of his tool box. The tool box was on Pemco's premises when forced open by his employer, and still there when Rico investigated. According to Pemco, the break-in occurred when Rico failed to show up for work and it was necessary for Pemco to obtain the blueprints of the job on which Rico was working so that the job could be expedited.
We are of the opinion that the injuries, if any, did arise out of and in the course of his employment, and that his sole and exclusive remedy is under the provisions of the Mississippi Workmen's Compensation Act.
For these reasons the order of the circuit court, dismissing with prejudice Rico's declaration on the ground that plaintiff's sole and exclusive remedy is in a proceeding before the Workmen's Compensation Commission, is affirmed.
AFFIRMED.
*173 PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.