Argued and submitted September 19, reversed October 27, 1980

In the Matter of the Compensation of

## VOSBERG,
*Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 79-2065, CA 17593)

618 P2d 471

Robert S. Gardner, Corvallis, argued the cause for petitioner. On the brief were S. David Eves and Ringo, Walton, Eves & Gardner, P. C., Corvallis.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant appeals from an order of the Workers' Compensation Board (Board) upholding the State Accident Insurance Fund's (SAIF) denial of compensation for an injury to claimant's left knee. The Board reversed a referee's decision ordering payment of the claim. We reverse the Board and reinstate the referee's order.

Claimant is a 60 year old log truck driver for Northside Lumber Company. On December 1, 1978, claimant, while refueling his truck, struck his left knee on a tow bar attachment that was protruding from the bumper of another truck. This incident occurred while claimant was performing his job duties. Claimant immediately felt some pain in his left knee but it subsided soon thereafter. He also noted some visible bruising. Claimant did not report the injury or seek medical treatment at that time because he felt that it was not serious.

On December 27, 1978, claimant, while at home, knelt down on a piece of plywood to check the muffler on a family car. As he started to get up he experienced severe pain in his left knee. Claimant sought medical treatment at a nearby hospital. Upon his admission to the hospital, claimant told the doctor about the December 1 incident and stated that he had experienced continual discomfort in his knee since that time. He described a catching and locking sensation and a feeling of something moving inside the joint. Testing was performed and claimant was diagnosed as having a torn medial meniscus of the left knee.

On January 2, 1979, Dr. Neumann, an orthopedist, performed surgery on claimant's knee to repair the tear to the medial meniscus. On January 5, claimant filed a claim based on the December 1 incident, requesting time loss and compensation for his knee injury. SAIF denied the claim on the basis that it was unable to substantiate any on-the-job accident occurring within the scope and course of claimant's employment.

The sole issue on review is whether there is sufficient evidence to link claimant's knee surgery to the work related accident of December 1, 1978. There is no question that the accident, in fact, occurred

Claimant's doctor, Dr. Neumann, stated that, in his opinion, the knee injury of December 1 was a contributing factor to claimant's subsequent need for surgery. He stated that it was "most likely" that claimant sustained the tear of his medial meniscus at that time, and that the tear extended and became more symptomatic as time passed. Dr. Neumann found that "there is a high medical probability concerning claimant's initial work injury and residual disability to his knee related to his injury of December 1."

On SAIF's request, the claimant was examined by Dr. Anderson. It was his opinion that the need for surgery was not "connected necessarily" with claimant's initial injury. Dr. Anderson made the following distinction between the two incidents and types of injuries:

> "The initial injury was a bruising type injury. There was no strain placed against the ligaments or about the knee. There was no catching, locking, clicking or swelling of the knee. Sympotmatically, it made a satisfactory response for a period of 26 days.
> "On the date of onset of severe pain, the patient was kneeling under a car with fully flexed knee and then came back to the upright at which time the history and findings would indicate that the medial semilunar cartilage was torn.
> "The diagnosis following the initial injury December 1, 1978, would be that of a traumatic synovitis as a result of a bruising type of injury about the knee.
> "The complaints for which the patient was treated were torn meniscus which from the history and findings would seem to result from the acute flexed position of December 27, 1978. * * *."

It is important to note that Dr. Anderson indicated that there was no catching, locking or swelling of claimant's knee after the December 1 injury. This is contrary to the rest of the evidence. Claimant

testified that after the initial injury he experienced an occasional catching of the knee. He stated that, depending on his movements, he could feel something move inside his knee. He did not seek treatment because it did not bother him "too bad" until the incident of December 27. Claimant's hospital and doctor reports also mention this clicking and locking sensation.

■■ The referee found the claimant to be a credible witness. The Board did not question claimant's report of the incident and his subsequent difficulties but simply found Dr. Anderson's opinion, distinguishing the two incidents and resulting injuries, to be more persuasive. On *de novo* review and giving due regard to the referee's acceptance of claimant's story, we agree with the referee's decision. *Gale v. Herfy's Corporation,* 46 or App 809, 812-813, 613 P2d 108 (1980).

Claimant's treating physician was of the opinion that there was a "high medical probability" that claimant's initial injury was related to his subsequent need for surgery. Dr. Anderson, who examined claimant only once, disagreed with this conclusion. Dr. Anderson's report, however, was based on facts that were not wholly accurate. On that basis, we find Dr. Neumann's opinion more persuasive. The referee's decision is reinstated.

Reversed.