858 So.2d 923 (2003)
Thomas GOODMAN, Appellant,
v.
COAST MATERIALS COMPANY, W.C. Fore and Pat Fore a/k/a Pat Fore, III, Appellees.
No. 2002-CA-01364-COA.
Court of Appeals of Mississippi.
November 4, 2003.
Michael W. Crosby, Gulfport, attorney for appellant.
Britt R. Singletary, Gary Dale Thrash, Jackson, Glen K. Till, attorneys for appellee.
Before KING, P.J., BRIDGES and IRVING, JJ.
BRIDGES, J., for the Court.
¶ 1. Thomas Goodman filed suit against Coast Materials Company, W.C. Fore and Pat Fore a/k/a Pat Fore, III, in the Circuit Court of Harrison County, Mississippi. The circuit court granted summary judgment in favor of the defendants. The court concluded that there was no genuine issue of material fact, thereby entitling the defendants to judgment as a matter of law. Goodman appeals to this Court from that judgment. We cite verbatim the issue on appeal.
CAN AN EMPLOYEE RECOVER COMMON LAW DAMAGES FROM HIS EMPLOYER OR CO-EMPLOYEE FOR AN INJURY OCCURRING OUT OF A PHYSICAL ATTACK BY THE OWNER/CO-EMPLOYEE IN THE COURSE AND SCOPE OF EMPLOYMENT FOR A COMPENSABLE INJURY, IF THE INJURED EMPLOYEE FILES FOR AND RECEIVES "SOME" COMPENSATION BY THE WORKERS' COMPENSATION COMMISSION?

FACTS
¶ 2. While working at Coast Materials Company, Goodman and the owner, W.C. Fore, and Pat Fore, III, an employee and relative of W.C. Fore, got into a dispute over whether Goodman failed to show up for work on a certain day. A fistfight occurred between Goodman and W.C. Fore in which both were injured.
¶ 3. Based on the incident, Goodman filed a report with the Workers' Compensation Commission on August 26, 1992, and received benefits for his injuries. However, after receiving approximately seven thousand dollars of workers' compensation benefits, Goodman then filed this common *924 law tort suit against Coast Materials, W.C. Fore, and Pat Fore, III.
¶ 4. A summary judgement motion was filed by the defendants asserting that because Goodman has elected to obtain workers' compensation benefits, an exclusive remedy, Goodman is, therefore, barred from bringing this common law tort. Summary judgment was granted finding no genuine issue of material fact.

STANDARD OF REVIEW
¶ 5. This Court, examining all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc, employs a de novo standard of review of a lower court's grant or denial of a summary judgment. "The evidence must be viewed in the light most favorable to the party against whom the motion had been made. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgement as a matter of law, summary judgment should forthwith be entered in his or her favor. Otherwise, the motion should be denied." McMillan v. Rodriguez, 823 So.2d 1173, 1176-77 (¶ 9) (Miss.2002).

ANALYSIS
WHETHER THE APPELLANT'S CLAIMS AGAINST THE APPELLEES, ARISING OUT OF AN ALLEGED WORKPLACE ASSAULT AND BATTERY, ARE BARRED AND PRE-EMPTED BY THE EXCLUSIVE REMEDY PROVISION OF THE MISSISSIPPI WORKERS' COMPENSATION ACT.
¶ 6. "The Workers' Compensation Act (the "Act") was enacted in 1948 in order to provide an assured recovery to injured employees and their dependants." Mullins v. Biglane Operating Company, 778 F.2d 277, 278 (5th Cir.1985) (citing Stanley v. McLendon, 220 Miss. 192, 70 So.2d 323 (Miss.1954)). With the passage of the Act, "workers gained the right to make a claim for a job-related injury regardless of fault, but lost the right to sue his employer in a civil tort. Recently, however, in response to a perceived need and in accordance with a nationwide trend, the Mississippi Supreme Court has carved out a narrow exception to this exclusiveness of remedy provision." Id.
¶ 7. In Miller v. McRae's Inc., 444 So.2d 368, 369 (Miss.1984), the court held that an employee of McRae's Department Store who was held and questioned by McRae's security guards on a charge of shoplifting was not barred by the Act from asserting a cause of action against McRae's for false imprisonment. The court agreed with the employee that the facts indicated a willful act, not an accidental injury, and that she was, therefore, not limited to a workers' compensation recovery. Id. at 371. "It was never the intention of the Workers' Compensation Act to bar an employee from pursuing a common law remedy for an injury that is the result of a willful and malicious act." Id.
¶ 8. Until recently, Miller was said to have two different issues to be resolved:
Where exclusivity of remedy is involved one must ask not only whether the injury arose out of and in the course of employment, but also, whether the injury is compensable under the Workers' Compensation Act.
Id. at 372. In context, it is clear that the court meant that the "injury" must be of a kind that is compensable. Some injuries such as humiliation, deprivation of personal liberty, and embarrassment were not compensable kind of injuries. Id. at 372 & n. 2.
¶ 9. In 2002, the supreme court abandoned part of Miller and rephrased the rest of the test. The court stated that Miller contained "a misinterpretation of *925 the exclusivity test ...." Newell v. Southern Jitney Jungle Co., 830 So.2d 621, 624(¶ 12) (Miss.2002). Miller had in one section improperly created a two-part test: "(1) the injury must have been caused by the willful act of another employee acting in the course of employment and in the furtherance of the employee's business; [and/or] (2) the injury must be one that is not compensable under the act." Id. at 624(¶ 13). The correct "inquiry set forth in Miller asks whether the injury is compensable under the act." Id. at 625(¶ 14). Compensability is resolved by determining whether the injury is an accidental one as defined in section 71-3-3(b). Id. at 624(¶ 15). The statutory definition includes injuries caused by a willful act committed by someone who is a stranger to the employment relationship. From this it is concluded that injuries resulting from willful or intentional acts by fellow employees are not "accidental." They, therefore, are not claims subject to the exclusive remedy provision of the Act.
¶ 10. After Newell there is still a recognized right to bring a civil suit against an employer for some intentional torts committed by co-employees. Newell did not reject the concept but only deleted part of the Miller explanation. The focus is now to be on whether there was an accidental injury under the Act. Miller and subsequent cases have held that intentional acts by those who are not strangers to the employment relationship may be the basis for such tort suits. Goodman has brought suit for what he alleges was an intentional assault by his co-employee. We find no argument under the present state of the law to dismiss this suit.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING P.J., LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND GRIFFIS, J. THOMAS, J., NOT PARTICIPATING.
SOUTHWICK, P.J., concurring:
¶ 12. The majority reverses because it finds that the Mississippi Workers' Compensation Act was not the exclusive remedy for the plaintiff Goodman. I agree with this conclusion, but the caselaw that is being applied appears askew. There are difficulties that need to be addressed.
¶ 13. Almost twenty years ago, the Supreme Court held that when a co-employee commits an intentional tort resulting in injuries that are not compensable under the Workers' Compensation Act, a civil suit may be brought. Miller v. McRae's, Inc., 444 So.2d 368, 372 (Miss.1984). The law has since changed as I will discuss. In Miller, the injuries were claimed to have resulted from false imprisonment after the employee was detained by a company security officer. The Act defines "accidental injury" as including willful acts committed by a "stranger to the employer-employee relationship or fellow employee acting outside the scope and course of his employment." Id. at 371.
[A]ccidental injury ... includes an injury caused by the willful act of a third person directed against an employee because of his employment while so employed and working on the job....
Miss.Code Ann. § 71-3-3(b) (Rev.2000). The court concluded from this that a willful act by a fellow employee, i.e., not a "third person," was not an accidental injury. Miller, 444 So.2d at 371.
*926 ¶ 14. The majority reviews the alterations in Miller that arose as a result of Newell v. Southern Jitney Jungle Co., 830 So.2d 621, 624 (Miss.2002). The only exception to exclusivity, which the Newell Court then says is not an exception at all but just a matter of applying the definition of "injury," is "an injury caused by a willful act of another employee acting in the course of employment." Id. In the only Supreme Court decision to cite Newell, the Court again applied the two-part Miller test that Newell summarized but rejected. Hurdle v. Holloway, 848 So.2d 183, 185 (Miss.2003). This failure to apply Newell's revisions was pointed out in the dissent, so it was not overlooked. Id. at 186, 187-88 (McRae, P.J., dissenting). However, the differences between Newell and Miller were not outcome-determinative in this most recent case. I find that Newell remains the present version of workers' compensation exclusivity.
¶ 15. If the nature of the injuries is deleted as a consideration because of Newell and despite Hurdle, we need to look at the caselaw to see what must be changed in our understanding of the law of exclusive remedy. Under Newell's correction, the justification for Miller is still in the definition of "accidental injury." What is implicit in the Miller approach is that the definition is a pregnant one. The premise for Miller is that the negative of the definition is implied, namely, that since willful acts of strangers to the employment relationship are covered, that must mean that intentional acts of individuals who are not strangers are free of the Act's exclusivity.[1]
¶ 16. Once the Court accepts that the negative is implied in the definition, another problem arises. By finding that an intentional act of someone who is not a stranger to the employment relationship takes the injury out of the workers' compensation system, the Court may have unconsciously but unavoidably overruled the theory of the co-employee assault cases that were found to permit coverage under the Act. The court early in the workers' compensation regime concluded that employee fights were inevitable, regrettable but compensable aspects of the workplace:
To the above stated contrasts in human nature we may add that some men are quarrelsome, contentious, bellicose and inclined to fight, while others are peaceful and not easily provoked to anger, and the very contact between employees who are required to work together subjects them to the hazards resulting from the pugnacious dispositions of their fellow employees in the same manner and to the same extent that they are exposed to the hazards of machines about which they are required to work.
Mutual Implement & Hardware Ins. Co. v. Pittman, 214 Miss. 823, 59 So.2d 547, 549-50 (1952). Citing numerous precedents from jurisdictions that had adopted workers' compensation laws much earlier than had this state, the Court held that "under our compensation law the injured employee is entitled to compensation for injury resulting from such a hazard the same as he would be if he had been injured by the machine in proximity to which he was required to work, and that the injury from this hazard arose out of and in the course of [ ] employment." Id., 59 So.2d at 556.
*927 ¶ 17. One dissent pointed out the inconsistency between Miller and such cases as Pittman. Blailock v. O'Bannon, 795 So.2d 533, 536, 537 (Miss.2001) (Smith, P.J., dissenting). Even so, the Supreme Court has never questioned the continuing validity of the Pittman approach.
¶ 18. One reason that this Pittman-line of cases has remained in place may be a policy one. If Pittman were overruled, then unless a plaintiff is able to show that the employer failed in some duty to prevent the assault, the employer would not be liable. The plaintiff would be left to rely as a source of recovery on the defendant employee's personal assets or insurance. The Supreme Court found early in the compensation regime that if employment brought the plaintiff and defendant together, one of the hazards of that contact was an assault. Pittman, 59 So.2d at 556. The dissent aptly stated that the Court had "crossed the Rubicon." Id. at 556 (Roberds, J., dissenting). The employer "is liable for every injury inflicted by one employee on a co-employee while working together at the place of work, even though the injury results from the personal malice on the part of the wrongdoer towards the injured employee." Id.
¶ 19. One means to avoid finding that Miller overruled Pittman and its sister cases is to rely on the Miller Court's reference to the fact that the damages from false imprisonment in Miller were not the kind recoverable under the Workers' Compensation Act. The nature of injury has occasionally been a reason to permit a separate suit. See Blailock v. O'Bannon, 795 So.2d 533, 535-36 (Miss.2001); Davis v. Pioneer, 834 So.2d 739, 742-43 (Miss.Ct. App.2003). The injuries caused by a co-employee's intentional acts are covered by the workers' compensation system if they are the "right" kind of injuries and can be the subject of separate civil suits if they are the "wrong" kind of injuries. If Newell is controlling, though, that is no longer a possible approach. If the nature of injury element of Miller is deleted from the permissible analysis, there is an even more pronounced conflict with precedents that have held that assaults between employees are compensable under the Act.
¶ 20. Dissenting Justice Roberds in Pittman found that the Rubicon had been crossed by requiring employer compensation for employee assaults on each other. What is unclear is whether Miller and its legitimate and other descendants have remained across the river or are attempting to return to the opposing ground. Allowing assaults to be included within the meaning of "accident" has been said to arise from viewing the event from the perspective of the claimant. Bradley & Thompson, Workers' Compensation Law, 9 ENCYCLOPEDIA OF MISS. LAW § 76:36 (2002); KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991). It is an untoward, unexpected, and perhaps "accidental" result of employment from the viewpoint of the injured employee whether the negligence or the intent of a co-employee was the cause of injury.
¶ 21. The Miller opinion is a challenging one. The Court explained its holding and swept too broadly in doing so when it concluded that the Workers' Compensation Act was never intended "to bar an employee from pursuing a common law remedy for an injury that is the result of a willful and malicious act." Id. at 371. To the contrary, the Court had just finished stating that a willful (and potentially malicious) act committed by a stranger to the employment relationship was subject to the exclusive remedy provision insofar as the employer's liability was concerned. The issue for us is what other intentional acts may be.
*928 ¶ 22. What is obvious in the current state of the law is that there is still a recognized right to bring a civil suit against an employer for some intentional torts committed by co-employees. Newell did not reject the concept but only deleted part of the Miller explanation. Since the focus now is only on whether there was an accidental injury under the Act, and since Miller and subsequent cases have held that intentional acts by those who are not strangers to the employment relationship may be the basis for such tort suits, I find no argument under the present state of the law to dismiss this suit.
¶ 23. However, I suggest the need for continued review of these issues in light of Newellwhich exposed some of the Miller fallaciesand of the complications that result in trying to piece together what is left. Perhaps the most fruitful approach, which would read the co-employee assault cases like Pittman as still being in effect, is to abandon the remnants of Miller outright. That would mean that the statutory reference to willful acts of strangers to the employment relationship is not the negative pregnant that Miller implicitly used to justify its holding. Accidents are viewed from the perspective of the employee. What is accidental depends not on the intent of the actor but on the impact on the claimant employee. The nature of the injury does not matter as Newell concluded. The Workers' Compensation Act occupies the field for employee injuries that occur in the scope of employment, and compensation is found, or not, under the Act's terms.
¶ 24. The source of Miller's logical difficulties is that it depends entirely on the Act's applicability to willful acts of strangers to create an exclusion for willful acts of co-employees. However, it is more reasonable to conclude that the statutory definition of injury needed to include willful acts of strangers because otherwise the employer might not be liable for medical costs and lost wages of employees who while in the scope of their employment were injured by strangers. The store clerk assaulted by a robber or the worker injured by a disgruntled former employee arguably would have no recourse against the employer under the workers' compensation scheme absent this part of the statutory definition of "injury." At the time that this language appeared in the original Act (1948 Miss. Laws, ch. 354, § 2(2)), the problems of independent intervening cause by those outside the employment relation assaulting a worker may have led to this clarifying of the employer's liability. Without the statutory definition, the employee's recovery for injury might have depended on the resources of the criminal and the worker's personal insurance. Though the statutory language regarding willful acts of third persons was therefore useful, no additional language is needed to provide coverage for willful acts of fellow employees. Injuries from them would be subject to the exclusive remedy of the Act because of principles that were discussed in Pittman and which were understood, as I will detail, at the time that the Workers' Compensation Act was adopted in 1948.
¶ 25. At the dawn of workers' compensation in Mississippi, a legal expert explained that an assault by a co-employee was an "accident" that permitted coverage; when an "intentional violent assault perpetrated by another [who was not an employee]... arose out of some incident of the employment, recovery is generally allowed." Wex S. Malone, "Mississippi Act in Prospect," XX MISS. L.J. 137, 149 (1949). Pittman in 1952 made official what was only in prospect in this law journal article.
¶ 26. This interpretation removes the Miller conundrums. It abandons what is called a narrow exception to the exclusivity *929 principle, Lewallen v. Slawson, 822 So.2d 236, 238 (Miss.2002), but one that has proven to be the source of broad confusion. Basically, if an injury occurred at the workplace or otherwise as a result of the worker's employment, it is compensable under the Act. There would not be any exceptions, but there would be situations that would fall outside that description. For example, workers' compensation coverage would not be available for assaults that occur at the workplace but are the result of causes unrelated to employment, such as a personal grievance between two people that begins outside the workplace but is continued while the employee is at work. Hawkins v. Treasure Bay Hotel & Casino, 813 So.2d 757, 759 (Miss.Ct.App. 2002).
¶ 27. Miller is not the most carefully reasoned of precedents, distorts other caselaw with a better analytical pedigree such as Pittman, and will continue to sow confusion as long as it remains at work in this legal field. Still, I agree with the majority that Goodman sufficiently described grounds for a separate suit under the Miller understanding of workers' compensation exclusivity.
Election of remedies
¶ 28. Until some additional clarification is brought to these issues, civil suits such as Goodman's must be allowed to proceed unless something has occurred to forfeit the right to bring a separate action. Goodman already has been compensated by his employer for his medical expenses. He also received benefits based on about three months of lost wages while he was recuperating from his injuries. Goodman filed the required form reporting the injury. Miss.Code Ann. § 71-3-67 (Rev.2000). This "First Report of Injury" set out the same claim as in Goodman's suit, namely, that he was assaulted by one of his co-employees. He never filed a "petition to controvert," which is a filing on a disputed claim. MISS. WORKERS' COMP. COMM. PROC. R. 2 & 3, B 5, 11 Form.
¶ 29. Whether a claimant would succeed in a separate civil suit under the Miller principles will usually be open to doubt. Does an employee who enters the workers' compensation system forfeit any right to pursue the separate and contradictory remedy of a civil suit? Had the employee decided to pursue the civil suit first, would he still have the right to workers' compensation benefits?
¶ 30. The Supreme Court has addressed the second scenario. When an employee receives a settlement to end a civil suit against his employer, that amount is a credit against the amount owed by the employer and carrier in a workers' compensation proceeding. Sawyer v. Head, Dependents of, 510 So.2d 472, 480 (Miss. 1987). The Court said that there was no defect in a claimant's seeking worker's compensation benefits or a civil suit recovery when the employer has denied liability both under the Act and in tort. Sawyer concerned the appeal from a workers' compensation judgment. The earlier settled tort suit, at least by the time of the Supreme Court opinion, appeared to have no basis in law. A tort suit should be dismissed "if the evidence shows that [the plaintiff] is entitled to worker's compensation benefits arising out of the same occurrence." Id. at 476. But the settlement of the tort suit did not prevent a claim for workers' compensation benefits, primarily because of a statute that "[n]o agreement by an employee to waive his right to compensation under this law shall be valid." Id. at 477, quoting Miss.Code Ann. § 71-3-43 (1972).
¶ 31. We have the reverse. There was no attempt to get the employee to waive his workers' compensation rights. There also was no denial by the employer of the *930 employee's entitlements to benefits. Does the agreement to pay and then the actual payment of statutory benefits prevent a later civil suit? The Supreme Court implied but did not hold that estoppel from pursuing a civil suit would exist only if the employee had filed a petition to controvert at the Commission. Blailock, 795 So.2d at 536. What is necessary is that the employee seek to have the Commission resolve a contested claim. It is not sufficient that notice of injury is filed and benefits are paid. The record here reveals no petition to controvert but only a notice of injury, from which the employer without disputing the matter paid benefits. The right to bring this suit has not been forfeited.
McMILLIN, C.J., AND GRIFFIS, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The Supreme Court has at times made a distinction in this area of the law between willful and intentional acts. Stevens v. FMC Corp., 515 So.2d 928, 930 (Miss.1987). Other times the Court has combined the two and said that the statute provides an exception for "willful and intentional" acts. Blailock v. O'Bannon, 795 So.2d 533, 535 (Miss.2001). The distinction is not relevant here, and its nuances therefore need not be explored.